IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| WILLIAM DITTY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | 1:03-CV-151 (WLS) |
| | : | |
| HANSFORD JOHNSON, ET. AL. | : | |
| | : | |
| Defendants. | : | |

_____

**ORDER**

Presently pending is Defendants' motion to dismiss, or in the alternative, for summary judgment. (Tab 12). For the following reasons, Defendants motion to dismiss, or in the alternative, for summary judgment (Tab 12) is **GRANTED.**[1]

**BACKGROUND**

This is an employment discrimination case alleging disability discrimination and retaliation in violation of the Rehabilitation Act of 1973 ("Act"), 29 U.S.C. § 701. Specifically, Plaintiff alleges that the Government failed to accommodate his disability of depression and Circadian Sleep Rhythm Disorder.

Plaintiff William R. Ditty is a life-long resident of Albany, Georgia. Beginning in January 1987, Plaintiff began working at the Marine Corps Logistic Base ("MCLB"). Plaintiff was so employed until he was terminated by the Government in January 2001. Originally

_____

[1]. Though filed as a motion to dismiss, or in the alternative, for summary judgment, the motion in almost all respects is a motion for summary judgment. The Court notified the parties that the motion would be treated as a motion for summary judgment unless one of the parties objected. (Tab 31). None of the parties have filed an objection.

1

Plaintiff was hired as a temporary draftsman at the GS-5 level. In 1996, Plaintiff was working as an Industrial Engineering Technician at the GS-11 level.

As an Industrial Engineering Technician his duties varied over time. In late 1998, Plaintiff was working in the Methods and Standards section of the Program Management Department. Scott Clements was Plaintiff's supervisor and Clements was supervised by Harold Edison. For a short time, Plaintiff was supervised directly by Warren Akers. Harold Edison reported to Don Willis, who in turn, reported to the base commander, Colonel Robert Cerny.

The Methods and Standards section provided "process support" for the MCLB maintenance center. The section employees design, assemble, and repair lines and sets drafting standards. Plaintiff had no particular job assignment but worked on various projects as they were assigned by his supervisors.

Beginning in 1993, Plaintiff began to suffer from depression, anxiety and sleep problems. Sometime around 1998, these problems became severe as a result of stress related to his marriage ending and problems on the job.

Between December 1998 and December 2000, Dr. Marie Glenn, a psychiatrist at Phoebe Putney Memorial Hospital treated Plaintiff for his ailments. Plaintiff was also treated from 1993-2001 by clinical psychologist, Dr. Cheryl Gratton. Dr. Gratton diagnosed Plaintiff as suffering from severe depression. Dr. Glenn diagnosed Plaintiff with "major depressive episodes, single, chronic, severe, without psychotic features" and with "circadian rhythm sleep disorder." Dr. Glenn stated that Plaintiff's sleep rhythm constantly changed preventing him from having normal sleep patterns. Plaintiff testified that he may go 48 hours or more without

sleep. This inability to form consistent sleep patterns prevented him, according to Plaintiff, from attending work regularly.

The intensity of his sleep disorder varied from 1998-2001. Even so, Plaintiff was never free of the symptoms during this time. Dr. Glenn told Plaintiff's supervisor that Plaintiff "was unable to awaken on time and stay awake despite a loud alarm system." In December 1999, Dr. Glenn gave a more positive report of Plaintiff's illness. By January 2000, however, Dr. Glenn reported that Plaintiff's illness had become more severe causing Plaintiff to sleep for 15-20 hours at a time when he could fall asleep and then being unable to fall asleep for approximately 20 hours after awaking.

As to his depression, Dr. Glenn stated that Plaintiff had a history of depression and anxiety for approximately two years. Symptoms included, but were not limited to, the inability to work, low energy levels, insomnia, hypersomnia during the day, feelings of sadness, decreased concentration, passive death wishes, weight loss and decreased self-esteem. Dr. Glenn found that improvements in Plaintiff's depression did not effect his chronic insomnia.

During this period, Plaintiff was treated with various medications. Plaintiff proved to be intolerant of the medications prescribed for depression and the medications prescribed for his sleep disorder did not significantly improve his symptoms of insomnia. Dr. Glen attempted to help Plaintiff to reset his biological clock by altering the times Plaintiff attempted to go to bed. This attempt alleviated his sleep disorder symptoms for a brief period.

Prior to his termination, Plaintiff and his doctors informed Defendant of his disabilities. At the same time, Plaintiff and his doctors requested three different accommodations: (1) time off during the period his biological clock was being reset; (2) a transfer to a different section or

3

job; and (3) the provision of a "goal-oriented environment."  Defendant did allow Plaintiff some time off during the period doctors were trying to reset his biological clock, but denied Plaintiff's request for a transfer.

Plaintiff's desire for a transfer was directly related to changes being made to the Department beginning in 1998.  During that year the Methods and Standards Department was reorganized, and elements of other sections/departments were added to his Department.  The changes resulted in confusion among employees and management.  Allegedly, managers and employees were not sure of what they were supposed to do, project specifications were changed in the middle of projects and senior management was unable to make firm decisions about projects.  Dr. Gratton stated that the confusion at work was impairing Plaintiff's recovery and that Plaintiff would benefit from a work environment with clearer goals and guidelines.  According to Plaintiff, this change could be achieved either by providing Plaintiff with clearer assignments or by transferring Plaintiff to another department or section.  Neither of these requests for accommodation were allowed by Defendant.

Defendant denies any wrongdoing and denies that Plaintiff suffered from a legitimate disability. Plaintiff was terminated effective January 12, 2001, for unauthorized absenteeism.  According to Defendant, Plaintiff took unauthorized leave for a total of 134.5 hours between July 17, 2000, and November 3, 2000.  Plaintiff had previously been provided a written warning concerning unauthorized absences.  The decision to terminate Plaintiff was affirmed by the Merit Systems Protection Board ("MSPB").

Since his termination, Plaintiff's medical ailments worsened for a period of time but significantly improved sometime after October 2001.  For approximately a year, Plaintiff

4

performed only odd jobs to support himself. In 2002, Plaintiff obtained a contractor position with Andrew Tent Company. As of December 2004, Plaintiff was employed full-time for National Stone Fabricators in Albany, Georgia, and no longer considered himself disabled.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court is required to "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (quotations and citations omitted).

The moving party carries the initial burden of showing that there is an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The substantive law governing the case determines which facts are material, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). For issues on which the non-movant bears the burden of proof at trial, the moving party "simply may show—that is, point out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be

unable to prove its case." <u>Fitzpatrick</u>, 2 F.3d at 1116 (quotations and citations omitted).

If the moving party fails to overcome this initial burden, the Court must deny the motion for summary judgment without considering any evidence, if any, presented by the non-moving party. <u>Fitzpatrick</u>, 2 F.3d at 1116. If, on the other hand, the moving party overcomes this initial burden, then the non-moving party must show the existence of a genuine issue of material fact that remains to be resolved at trial. <u>Id.</u> Moreover, the adverse party may not respond to the motion for summary judgment by summarily denying the allegations set forth by the moving party. Rather, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

## II. ANALYSIS

Defendant argues that it is entitled to summary judgment on all claims based on numerous grounds. Defendant argues that Plaintiff cannot prove that he was discharged, or suffered any other adverse employment action, or was otherwise discriminated against because of his disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701.[2]

### Disability Discrimination

There are three ways in which a plaintiff can establish a prima facie case of discrimination: "by presenting direct evidence of discriminatory intent; by meeting the test set

---

[2]. Plaintiff, in his complaint, seeks some sort of review of the MSPB decision concerning some non-discriminatory allegations that were decided against him. Defendant contends, and Plaintiff does not disagree, that review of those allegations/claims rest with the United States Court of Appeals for the Federal Circuit. To the extent such issues are before the Court, Plaintiff's assertion of these issues is **DISMISSED without prejudice** for this Court's lack of authority to consider them or jurisdiction.

6

forth in McDonnell Douglas Corp. V. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); or by demonstrating through statistics a pattern of discrimination." Early v. Champion International Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).  "'Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption.'" Early, 907 at 1081 (alterations in original, citations omitted).  An example of direct evidence would be a memo from management that said, "'Fire Early – he is too old.'" Id.

In this case, there is little or no direct evidence of discriminatory intent and Plaintiff does not seek to prove his case by statistical evidence.  Therefore, Plaintiff must prove his case by satisfying the inferential test as set forth in McDonnell Douglas Corp. V. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie claim of discrimination based on failure to accommodate his disability, Plaintiff must show (1) that he is "an individual with a disability;" (2) that he is a "qualified individual with a disability;" and (3) that he suffered an adverse employment action "solely by reason" of his disability. 29 U.S.C. 794(a); Jackson v. Veterans Administration, 22 F.3d 277 (11th Cir. 1994).   If Plaintiff establishes a *prima facie* case, then the burden shifts to Government to show that it had a legitimate, non-discriminatory reason for terminating Plaintiff.   Walker v. Prudential Property and Casualty Ins. Co., 286 F.3d 1270, 1274-75 (11th Cir. 2002).   The burden then shifts to Plaintiff to show that the articulated reason was merely a pretext for discrimination.  Walker, 286 F.3d at 1275.

Defendant does not concede that Ditty has made out a *prima facie* case for discrimination.  In fact, Defendant argues that Plaintiff has not made out a *prima facie* case of

7

discrimination.

A person is "an individual with a disability" within the meaning of the Act if: (1) he has a physical or mental impairment that substantially limits one or more major life activities; (2) he was regarded as having a physical or mental impairment that substantially limits one or more major life activities; or (3) has a record of a physical or mental impairment that substantially limits one or more major life activities. 29 U.S.C. § 705(20)(B); Roth v. Lutheran General Hospital, 57 F.3d 1446, 1453-53 (7th Cir. 1995). Plaintiff alleges that his depression and sleep disorder are impairments that substantially limit major life activities, *i.e.,* sleep and work. Defendant concedes that Plaintiff has a physical impairment and that sleep and work are major life activities. Defendant does not, however, concede that Plaintiff's impairments substantially limit his major activities.

Defendant argues that Plaintiff's impairments do not substantially limit his sleep. The Eleventh Circuit has held that a diagnosis of an impairment does not constitute a disability as recognized by the ADA or the Rehabilitation Act. Prichard v. Southern Co. Services, 92 F.3d 1130 (11th Cir. 1996).[3] The EEOC regulations have defined "major life activities" as those "functions such as caring for oneself, performing manual tasks, walking seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1639.2(I)(1999). In analyzing whether a disability qualifies as a substantial limitation of a major life activity, a court must consider: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. 1630.2(j)(i-iii) (1999).

---

[3]. Cases brought under the ADA and the Rehabilitation Act involve the same analysis.

According to Defendant, Plaintiff has failed to produce evidence showing that there was a medical link between Plaintiff's alleged impairments and unauthorized absences. From July 17, 2000, through November 3, 2000, the uncontroverted evidence shows that Plaintiff accrued 134.5 hours over 22 separate occasions of unauthorized leave.  During a 622 hour work period, Plaintiff was absent 197.5 hours.

While Plaintiff's physician stated that Plaintiff's depression and insomnia would cause some absences, the physician refused to state that all of the above-referenced absences could be attributed to his illnesses.  (Ex. A, p. 6).  A separate expert, Dr. Shaddock, testified that Plaintiff's depression and sleeping disorder was not so severe as to cause him to miss so much work.  (Ex. A, p. 6).

The Government argues that there is no link between Plaintiff's disabilities and his absenteeism.  Besides Plaintiff's, at best ambiguous, medical evidence, the Government points to the fact that during the time in question Plaintiff was able to operate a horse carriage business and a Christmas tree farm.  The horse carriage business was started by Plaintiff many years before he was diagnosed with his impairments.  Plaintiff began the Christmas tree business during the time in question.  Defendant points out that Plaintiff's illness did not cause him to miss many consecutive days without calling in.

The next element of a *prima facie* case is whether Plaintiff has established that he is a "qualified individual with a disability."  The courts have defined a qualified individual with a disability as an individual with a disability who with or without reasonable accommodations, can perform the essential functions of his job. Jackson v. Veteran Administration, 22 F.3d 277, 281 (11th Cir. 1994).  The Supreme Court has defined a qualified individual as "one who

is able to meet all of a program's requirements in spite of his handicap." Southeastern Community College v. Davis, 442 U.S. 397, 406 (1979).

There is a two part test in determining whether an employee is a qualified individual. First, the court must determine if the employee can perform the essential functions of the job. If the employee can not perform the essential functions of the job, then the court must determine whether there existed any reasonable accommodation by the employer that would allow the employee to perform those function. Jackson, 22 F.3d at 281. The second part of the test requires the plaintiff to describe a reasonable accommodation that will enable him to perform the essential functions of his job. Willis v. Conopco, Inc. 108 F.3d 282, 286 (11th Cir. 1997).

Defendant contends that Plaintiff is not a qualified individual. Defendant contends, as with the plaintiff in Jackson, Plaintiff's excessive absenteeism prevents Plaintiff from being a qualified individual because Plaintiff was not present to perform the essential functions of his job. Jackson, 22 F.3d at 278. Defendant argues that Plaintiff's absenteeism prevented him from completing assigned task and disrupted work assignments, and therefore, Plaintiff's presence on the job was an essential element of his job.

Plaintiff concedes that his presence was an essential element of the job but that he had requested two accommodations, besides time off to reset his biological clock, which would have ameliorated the absenteeism problem. Specifically, Plaintiff and his doctors asked (1) for a transfer to a different department, and (2) "the provision of a goal oriented environment." (Plt.'s Br. p. 13). According to Plaintiff, the requests were timely made. If one or both of these accommodations had been acted upon, Plaintiff argues, his absenteeism would have been

"cured." (Plt.'s Br. p. 13).

As to the transfer accommodation, Plaintiff argues that there is evidence in the record to show that other engineer positions were available for which he was qualified. Also, there is evidence that others in his section were voluntarily transferred. As for the request for a goal oriented environment, Plaintiff concedes that the actual request could be called vague. However, Plaintiff points to the letter sent by Dr. Gratton that discussed this request in detail. The letter said that Plaintiff needed to be out of an environment that called for "busy work" and in a more goal oriented environment. According to Plaintiff, this letter was sufficient to put Defendant on notice of Plaintiff's needs and to trigger a dialogue to find the appropriate environment. Plaintiff's supervisors admit receiving these two requests and sought clarification from his physician. The physician never responded. Defendant argues that without explanation, the requested accommodations were unreasonable.

Defendant argues that there is no evidence that if it had implemented either of these requests that it would have cured his absenteeism. Defendant argues that Plaintiff was more interested in working on his carriage business and Christmas tree business that working at MCLB. Plaintiff argues that the fact that he was able to work subsequent jobs after his termination that the requested accommodations would have cured his absenteeism.

The question of whether Plaintiff was a "qualified individual" was resolved against him by the MSPB. According to the hearing officer, Plaintiff failed to submit any request for an accommodation, other than a brief request for leave to reset his biological clock. Therefore, according to Defendant, as a matter of law Plaintiff failed to establish that he was a qualified individual with a disability.

While not conceding that Plaintiff submitted valid and cognizable requests for accommodation, Defendant argues that, as a matter of law, Plaintiff's absenteeism made him an unqualified individual with a disability. The Eleventh Circuit has stated that when an employee is unable to give an employer a reasonable date for returning to work, the employee's absenteeism will make the employee unqualified as a matter of law. Wood v. Green, 323 F.3d 1309 (11th Cir. 2003).

In Wood, the employee suffered from cluster headaches. Wood, 323 F.3d at 1311. After missing considerable amounts of work over a three month period, Wood was warned by his supervisor that his absenteeism was causing problems. Id. Soon thereafter, Wood's headaches returned. Wood then asked for indefinite leave without pay. The leave was granted. Id. About a month later, after hearing from Wood's doctor, there was still no date set for Wood's return to work. Wood was then terminated. Id.

In finding that Wood's request for an indefinite leave of absence, without a return date, was not a reasonable request for an accommodation, the Court relied on another panel decision:

> The court further explained that an employer did not violate the ADA by "refusing to grant [an employee] a period of time in which to cure his disabilities where the employee sets no temporal limit on the advocated grace period, urging only that he deserves sufficient time to ameliorate his conditions."

Id. at 1313. The Court went on to explain that the regulations governing disability discrimination did not contemplate such leaves as a reasonable accommodation:

> Nothing in the text of the reasonable accommodation provision requires an employer to wait for an indefinite period for an accommodation to achieve its intended effect. Rather, reasonable accommodation is by its terms most

12

> logically construed as that which, presently, or in the immediate future, enables the employee to perform the essential functions of the job in question.

Id. (citing Duckett v. Dunlop Tire Corp., 120 F.3d 1222, 1226 (11th Cir. 1997).

The Court did not rule that every request for indefinite leave was unreasonable. In this case, however, where leave had been granted in the past, that the leave times and Wood's absenteeism came more often and for longer periods of time, it was not unreasonable for the employer to terminate Wood because Wood was not a qualified individual with a disability. There was no indication when Wood could return to work.

Defendant also relies on the majority opinion in Jackson which found that the plaintiff's excessive absenteeism prevented him from performing the essential function of his job. Jackson, 22 F.3d at 279. The Court found there was no way an employer could reasonably accommodate Jackson's unpredictable absences. Id.

Here, the question is not whether Plaintiff requested indefinite leave but whether his past absenteeism amounted to such a request or that the past absenteeism made him otherwise unqualified to perform the essential functions of his job. It is not the same question of whether Plaintiff made a reasonable request for an accommodation. Defendant does not argue that Plaintiff did not make a request for a transfer to another department or for work that was more goal oriented. Instead, Defendant argues that such requests were unreasonable **and** that his past absenteeism can be analogized to a request for indefinite leave. These are two separate and distinct questions. The real question before the Court, at this point in the analysis, is whether Plaintiff was a "qualified individual." To be a qualified individual, a plaintiff must be able to perform the essential functions of the job with a reasonable

13

accommodation. <u>Jackson v. Veterans Administration</u>, 22 F.3d 277 (11th Cir. 1994).

Based on the evidence presented by Plaintiff, he did not satisfy his burden of showing that there existed a genuine issue of material fact that he was a "qualified individual." Further, even if Plaintiff made such a showing, he failed to show that his requests for an accommodation were reasonable.[4]  Therefore, the Government's motion for summary judgment on Plaintiff's Rehabilitation Act claim (Tab 12) is **GRANTED.**

**SO ORDERED**, this  29th  day of September, 2005.

       /s/W. Louis Sands
       **W. LOUIS SANDS, CHIEF JUDGE**
       **UNITED STATES DISTRICT COURT**

---

[4]. The Court also observes that the request to transfer to a different job is inconsistent with Plaintiff assertions that he could perform the essential functions of his job.